**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **C.E.-1, C.E.-2, M.E., K.E.-1, C.E.-3, K.E.-2, J.E.-1, and J.E.-2**

**No. 21-0634** (Mason County 19-JA-74, 19-JA-75, 19-JA-76, 19-JA-77, 19-JA-78, 19-JA-79, 19-JA-80, and 19-JA-81)

**MEMORANDUM DECISION**

Petitioner Mother A.E., by counsel Paul A. Knisley, appeals the Circuit Court of Mason County's July 14, 2021, order terminating her parental rights to C.E.-1, C.E.-2, M.E., K.E.-1, C.E.-3, K.E.-2, J.E.-1, and J.E.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Michael N. Eachus, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without requiring the DHHR to provide services in compliance with the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 to 12213.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the proceedings giving rise to the current appeal, petitioner and the children's father had an extensive history of Child Protective Services ("CPS") involvement. According to the DHHR's petition and amended petition in the current matter, the parents had two prior CPS cases: one that began in 2013 and continued through 2014 and another that began in 2016 and ran through 2019. A third CPS case was opened and eventually gave rise to the current proceedings. Although not entirely clear from the record, it appears that these CPS cases also gave rise to prior abuse and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because several of the children share the same initials, numerals have been included with the children's initials, where necessary, in order to differentiate them from one another.

neglect proceedings, as petitioner admits on appeal that she was a named respondent in two such cases. Additionally, the record includes references from the court to the instant proceedings being the third abuse and neglect case filed against the parents. Relevant to the issues on appeal is the undisputed fact that petitioner received services over a period of several years prior to the filing of the instant petition.

In November of 2019, the DHHR filed the petition giving rise to the current proceedings. The petition alleged that the children suffered from various injuries, including the following: burns on K.E.-2's face after she and C.E.-3 were left unsupervised and played with a campfire; bruising on J.E.-1's back and scratches on her neck and face, which child C.E.-1 reported were caused when petitioner "hit her with a shoe"; and a "puss bleeding gash" on C.E.-1's head. The DHHR also alleged that an inspection revealed that the home was unsafe, as clutter, food, and trash throughout the home could harm the children. Based on these circumstances, the DHHR alleged that petitioner was unable to properly care for the children or assure their safety in the home. The DHHR also asserted that the parents "have exhausted all of the Department's in-home services over the course of four (4) years."

In January of 2020, the DHHR filed an amended petition alleging that when the children were removed, the parents provided them with dirty and moldy bottles that were not fit for the children to drink from. The DHHR also alleged medical neglect as J.E.-1 suffers from cerebral palsy, yet the parents failed to comply with Birth to Three services, resulting in the child being dropped from these critical services. J.E.-1 also likely required glasses and had several teeth that required caps. The DHHR further alleged that three of the children reported that petitioner would hold their heads underwater as punishment, and that then-ten-year-old M.E. disclosed to a teacher "that there has been child sex abuse by" petitioner.[2]

The court held adjudicatory hearings in July of 2020 and February of 2021, during which the DHHR presented evidence from DHHR workers and service providers. The guardian also presented evidence from various medical specialists and education personnel. Following the hearings, the court took adjudication under advisement and directed that the parties could submit proposed adjudicatory findings. Ultimately, the court found that the condition of the home was unsuitable for the children, a condition for which the children had been removed in a prior proceeding. The court also found that the parents failed to provide appropriate and necessary medical and dental care, which resulted in the children needing painful dental surgery to address the issues stemming from the lack of care. Of particular importance to the circuit court was the fact that J.E.-1 was discharged from Birth to Three, physical therapy, and other services simply because the parents missed multiple appointments. At the time the three-year-old child was removed from the home, she struggled to speak in complete sentences, could not walk without assistance, and could barely stand on her own. The parents also routinely sent the child to school without her walker or braces, which had been prescribed. The court also found that J.E.-1's weight loss after being returned to the parents was a result of their failure to provide her with proper nutrition. In regard to other children, the court found that those who attended school were chronically and habitually absent and that when they did attend, "they were filthy and had a foul odor." Personnel at their school permitted them to bathe on the premises, washed their clothes, and

---

[2]The sexual abuse allegation was never substantiated.

provided them deodorant on a regular basis. Additionally, the court found that the parents failed to properly supervise the children, as C.E.-2 once returned to school after the day concluded because he was afraid to go home.

The court then discussed petitioner's intellectual deficiencies, noting that it appointed her a guardian ad litem following her psychological evaluation and the determination that she "lack[ed] the minimal threshold for competency to independently participate in her court case." Based on this report, the court found that petitioner had an inability to provide the children with necessary food, clothing, shelter, supervision, medical care, and education. As such, the court adjudicated petitioner of neglecting the children.

In March of 2021, the DHHR filed a motion to terminate the parents' parental rights and stated that it opposed an improvement period for petitioner. The following month, petitioner filed a motion for a post-adjudicatory improvement period in which she asserted that she has disabilities, as identified in her psychological evaluation, and cited West Virginia Code § 49-4-604(c)(5)(C) as requiring that the DHHR make reasonable accommodations in accordance with the ADA.

On May 20, 2021, the court held a dispositional hearing, during which the DHHR presented testimony from several witnesses, and petitioner presented testimony from the psychologist who evaluated her. Relevant to the issues on appeal, Nikka Burchette, of Hand in Hand In Home Services, testified that she provided services to petitioner "on and off for about seven years." Ms. Burchette testified that petitioner previously had parenting and adult life skills services in place in her home and that "there have been recurring themes" across petitioner's cases, such as "[m]essy houses, etc." Ms. Burchette was then asked if she was aware that petitioner had "mental shortcomings" at the time she provided services in earlier cases, and she acknowledged that she did. She was then asked if the services provided to petitioner "were . . . different from the normal services you provide for everybody." Ms. Burchette responded that the services were special, in that "you had to do a more hands-on, more explaining, more visual. [Petitioner] had a hard time reading and understanding things, so it was more me speaking and going over things and just talking . . . at an age-appropriate level that she could understand." Ms. Burchette confirmed that petitioner did not receive services in the current case, even though it concerned additional issues that were not present in prior cases, such as medical and educational neglect. When asked if she could have provided services that differed from the prior cases, Ms. Burchette replied, "No, they are all the same for each family. It's all the same."

Additionally, a Court Appointed Special Advocate (CASA) representative was asked if any accommodations were made for petitioner's disability. The witness responded affirmatively and went on to explain that "since 2013, all resources have been repeated and exhausted through the Department of Human Resources, and there really isn't much left that could be implemented."

The court then took disposition under advisement and ordered the parties to submit proposed findings of fact and conclusions of law. In its ultimate order, the court found that the parents did not receive any services during the proceedings, other than supervised visitation, which the court described as "chaotic and at times unsafe for the children," requiring supervision and intervention by providers. Further, at the most recent visit, the floor was covered with coats, toys, and food. J.E.-1 tripped on the clutter and fell backward into a trashcan, which neither parent

noticed. The court noted that petitioner's psychological evaluation resulted in a "poor" prognosis for improved parenting, which was consistent with testimony at the dispositional hearing. Petitioner was found to lack understanding of the allegations against her, which precluded an accurate understanding of the necessary change to address these issues. Contrary to petitioner's argument that the DHHR failed to accommodate her disability as required by the ADA, the court "dispute[d] that proffer and recognize[d] that [petitioner] can barely take care of herself, let alone eight (8) minor children who have significant special needs." The court also noted evidence that C.E.-2 had problems with "feeling down" after visits and that K.E.-1 and M.E. expressed a desire not to live with their parents. The court then focused on the "drastic improvement" the children displayed after being placed in foster care. Their communication skills improved; they are happy, proud of their accomplishments, and healthy; and they improved in school. The court found that petitioner could not satisfy the burden for obtaining an improvement period, and that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected in the near future. The court also found that termination of petitioner's parental rights was necessary for the children's welfare, especially considering their extensive special needs. As such, the court terminated petitioner's parental rights.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner raises only one assignment of error in which she alleges that the circuit court erred in terminating her parental rights "without requiring the DHHR to provide ADA compliant services as required by [the] West Virginia Code." Confusingly, petitioner relies on West Virginia Code § 49-4-604(c)(5)(C), which provides as follows:

> (5) Upon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private

---

[3]The father's parental rights were also terminated below. The permanency plan for the children is adoption in their current foster homes.

child welfare agency, or a suitable person who may be appointed guardian by the court. The court order shall state:

. . . .

(C) Whether the department has made reasonable accommodations in accordance with the Americans with Disabilities Act of 1990, 42 U. S. C. § 12101 et seq., to parents with disabilities in order to allow them meaningful access to reunification and family preservation services[.]

The record shows, however, that the circuit court did not impose disposition under West Virginia Code § 49-4-604(c)(5). Instead, the court imposed disposition under West Virginia Code § 49-4-604(c)(6). Because petitioner fails to address the applicable statute under which the circuit court terminated her parental rights, she cannot be entitled to relief on appeal.

We find that termination of petitioner's parental rights was appropriate, given the chronic nature of petitioner's abuse and neglect of the children. As set forth above, the parents began receiving service in 2013 and, at one point, had a case that proceeded for three years. Despite the DHHR's extended efforts, the petition in this matter was filed a matter of months after the prior case was closed. While petitioner was able to comply with services such that the children were previously returned to her on more than one occasion, the record shows that petitioner was unable to make lasting change.

On appeal, petitioner argues that the circuit court erred in finding that she "was found to lack understanding of the allegations in her case, which precludes accurate understanding of the necessary changes she must make." It is unclear, however, why petitioner believes this finding was in error, as it was based on the opinion of the psychologist that evaluated petitioner and concluded that her prognosis for improved parenting was "poor." In that evaluation, the psychologist specifically concluded that petitioner's "reported lack of understanding of the allegations in her case precludes accurate understand of the necessary changes she must make." Given that the circuit court's finding was based on an explicit conclusion from an expert witness, petitioner cannot establish that the finding was in error.

Because the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the child's welfare, termination was appropriate under West Virginia Code § 49-4-604(c)(6). On appeal, petitioner does not challenge these findings, other than to attack the sufficiency of services that she received for approximately seven years across three abuse and neglect proceedings. However, we have explained that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be

5

substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the court's termination of petitioner's parental rights.

      For the foregoing reasons, we find no error in the decision of the circuit court, and its July 14, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**:  May 12, 2022


**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn